IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BENITA GRAVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:12-cv-01242 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Knowles |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Benita Graves' Motion for Summary Judgment on the Record ("Motion") (Doc. No. 12), which she filed with a Memorandum in Support (Doc. No. 13) on May 13, 2013. On June 10, 2013, Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion. (Doc. No. 14.) On August 23, 2013, Magistrate Judge Knowles issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be denied and the decision of the Social Security Administration be affirmed. (Doc. No. 18 at 41.) On September 17, 2013, Plaintiff filed Objections to the Report (Doc. No. 23), to which the Commissioner filed a Response (Doc. No. 25), Plaintiff filed a Reply (Doc. No. 29), and the Commissioner filed a Sur-reply (Doc. No. 33). For the reasons stated below, the Magistrate Judge's Report is **ADOPTED in PART**. The Court **GRANTS** Plaintiff's Motion in part, **DENIES** the Motion in part, and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Order.

1

I. BACKGROUND[1]

Plaintiff protectively filed an Application for Disability Insurance Benefits ("DIB") on April 21, 2008, alleging she has been disabled since August 2, 2007, due to osteoarthritis, fibromyalgia, paresthesia, migraines, and anxiety. (Tr. 112, 133.)[2] The Social Security Administration ("SSA") denied Plaintiff's applications initially (Tr. 47) and upon reconsideration (Tr. 60). Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ") on October 3, 2008. (Tr. 66.) Plaintiff's hearing was conducted on April 13, 2010 by ALJ James Lessis. (Tr. 22.) Plaintiff and Vocational Expert ("VE") Calvin Turner appeared and testified. (*Id.*) On March 18, 2011, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 16.)

Plaintiff filed a request for review of the hearing decision on March 18, 2011. (Tr. 110.) On September 27, 2012, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff filed this action on November 29, 2012, seeking judicial review of the ALJ's final decision under 42 U.S.C. §§ 405(g). (Doc. No. 1.) On August 23, 2013, Magistrate Judge Knowles issued the Report, recommending that Plaintiff's Motion be denied and the decision of the Commissioner be affirmed. (Doc. No. 18 at 2.) On September 17, 2013, Plaintiff filed an Objection to the Report's conclusion that the ALJ properly addressed the opinions of Drs. Jane Siegel, Bruce Butler, John Yuill, and M. Farooq Ali. (Doc. No. 23 at 4, 6–7.)

---

[1] The Court concurs with the Magistrate Judge's finding that "[t]he parties and the ALJ have thoroughly summarized and discussed the ... evidence of Record." (Doc. No. 18 at 4.) Furthermore, the instant motion relates only to a small set of facts drawn from a voluminous record. Accordingly, the Court will only describe the facts as necessary to facilitate analysis of the parties' arguments below.
[2] An electronic copy of the administrative record is docketed at Doc. No. 8.

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the

Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. ALJ LESSIS' DECISION

To be eligible for DIB and SSI, a claimant has the ultimate burden to establish he or she is entitled to benefits by proving his or her

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (2012); *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity ("RFC") (e.g., what the claimant can still do despite his or her limitations); if the claimant has the

---

[3] The Listing of Impairments is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2014).

> RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

> 5. At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. § 416.920(a) (2014); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Here ALJ Lessis made the following findings: (1) "The claimant has not engaged in substantial gainful activity since August 2, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*)"; (2) "The claimant has the following severe impairments: fibromyalgia, CMC joint osteoarthritis, migraine headaches, depression and anxiety (20 CFR 404.1520(c))"; (3) Graves does not have an impairment that meets or medically equals a listing-level impairment; (4) Graves is unable to perform any past relevant work, and has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to maintain employment at the level of lifting and carry [*sic*] a maximum of 10 pounds; to stand and walk 2 hours in an 8-hour workday; to sit 6 hours in an 8-hour workday; she is restricted to negligible climbing, balancing, kneeling, stooping, crouching, crawling; she is restricted to negligible use of pedals (foot controls); she is restricted to frequent reaching, handling, fingering, and feeling; and negligible exposure to extreme temperatures, vibrations, moving mechanical parts, electric shock, hazardous exposed places, radiation, explosives, and to fumes, odors, dust, gasses, and poor ventilation. Furthermore, she is limited to minimal contact with the public, co-workers, and supervisors. From a mental standpoint, the claimant has the reasoning, mathematical, and language (R-M-L) development to do the following: apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; deal with problems involving a few concrete variables in or from standardized situations; add, subtract, multiply, and divide all units of measure; perform the four operations with like common and decimal fractions; compute ratio, rate, and percent; draw and interpret bar graphs; perform arithmetic operations involving all American monetary units; read a passive vocabulary of 5,000 to 6,00 words; read at a rate of 190-215 words per minute; read adventure stories and comic books, looking up familiar words in a dictionary for meaning,

spelling, and pronunciation; read instructions for assembling model cars and airplanes; write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs; speak clearly and distinctively with appropriate pauses and emphasis, correct pronunciation, and variations in word order, using present, perfect, and future tenses.

(Tr. 10–11.) At step five of the analysis, whether the claimant is able to do any other work, the ALJ made the following findings:

7. The claimant was born on June 1, 1963 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because the using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2007, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15–16.) The ALJ concluded that Graves had not been under a disability at any time through the date of his decision. (*Id.* at 16.)

## IV. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff objects to Magistrate Judge Knowles's recommendation that the ALJ properly rejected the opinions of four of Plaintiff's physicians: Drs. Jane Siegel, Bruce Butler, John Yuill, and M. Farooq Ali. (Doc. No. 23.) The Magistrate Judge found that "the ALJ did appropriately consider the physician records" (Doc. No. 18 at 14) of Drs. Yuill, Siegel, and Ali, and that "the

ALJ's failure to explicitly discuss Dr. Butler's findings constitutes harmless error" (*id.* at 19). Plaintiff contends that the failure to accord proper weight to these physicians' opinions at step four in the analysis, or to give good reasons for rejecting their opinions, constitutes reversible error. (Doc. No. 23 at 3.) Furthermore, the error is not harmless because the physicians opine that Graves cannot perform certain hand manipulations with her left hand, but at step five in the analysis the ALJ relied on Vocational Expert testimony about jobs Graves can perform in the economy that require performing such hand manipulations. (*Id.* at 5.)

*A. Treating Source Rule*

Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013), reh'g denied (May 2, 2013); *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 (D. Kan. 2011). If a medical source qualifies as a "treating source" under the regulations, the ALJ must give her "medical opinion" "controlling weight" if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).

If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to accord the opinion upon consideration of the following factors: "the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the

7

opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give a treating source's opinion controlling weight, he must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Id.* (internal citations omitted). A failure to give "good reasons," or a failure to determine the degree of deference owed to a non-controlling treating source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).

This Court must remand if the ALJ failed to respect the plaintiff's procedural right to good reasons unless that failure constitutes harmless error. *Wilson*, 378 F.3d at 547. Failure to give good reasons may be harmless where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) the Commissioner "adopt[ed] the opinion of the treating source or ma[de] findings consistent with the opinion," or (3) "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.*

The Court will evaluate the ALJ's review of each physician's records in turn by analyzing whether the physician constitutes a treating source, whether the records at issue constitute a medical opinion entitled to controlling weight, whether the opinion was given controlling weight and, if not, whether the ALJ either gave good reasons or fulfilled one of the three harmless error exceptions.

8

1. Dr. Siegel

Plaintiff first argues the ALJ erred in failing to give controlling weight to Dr. Siegel's medical opinions. (Doc. No. 23 at 4.) As an initial matter, the Court finds that Dr. Siegel is a treating source. Graves was a patient of Tennessee Orthopaedic Alliance from February 2005 through April 2008 (*see* Tr. 676–701), and Dr. Siegel's patient from at least November 2007 through April 2008 (Tr. 676–86.) Accordingly, Dr. Siegel "has, or has had, an ongoing treatment relationship" with Graves, who visited Dr. Siegel "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [her] medical condition," as indicated by the office visit records showing that Graves returned to Tennessee Orthopaedic Alliance for regular follow-up visits at intervals prescribed by Dr. Siegel and other practice staff. *See* 20 C.F.R. § 404.1502. (*See* Tr. 676–701.)

Because Dr. Siegel is a treating source, her "medical opinions" are, with certain exceptions, entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2). The Magistrate Judge found the ALJ properly dismissed Dr. Siegel's statement because it was not a medical opinion, and the ALJ properly considered the other medical evidence provided by Dr. Siegel. (*See* Doc. No. 18 at 18.) Graves disagrees. (Doc. No. 23 at 4.) The opinion at issue states in its entirety:

> Benita returns today. She has been released on disability from work. The thumb continues to be problematic for her. I anticipate this is a chronic problem without an endpoint and that she is going to have to modify gripping and grabbing activities chronically for the rest of her life with that left thumb. Even if she had a CMC arthroplasty, she would not have a good grip following that surgery and could not do any job which would require repetitive or ongoing gripping with that left thumb. We'll see her back as needed.

(Tr. 676.)

To be entitled to controlling weight, a treating source's opinion must be a "medical opinion." Program Operations Manual Sys. ("POMS") DI 24515.004(1); *see* 20 C.F.R. § 404.1527(c). Medical opinions "are statements from [treating] physicians and . . . other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); *Pedigo v. Astrue*, No. 1:09-cv-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) report and recommendation adopted, No. 1:09-cv-93, 2010 WL 1408427 (E.D. Tenn. Apr. 2, 2010) ("Where treatment records contain only the subjective complaint of the claimant and the diagnosis of a treating physician unaccompanied by any objectively-supported medical opinion as to the limitations imposed by the condition, the ALJ may properly discount them.").

For instance, in *Welch v. Colvin*, 566 F. App'x 691, 694 (10th Cir. 2014), a doctor's notation that the claimant "had right neck pain, 'numbness and weakness in [her] C5 and C6 distributions,' and recommended surgery as a result of those symptoms" was not a medical opinion because the doctor did not "opine[] on [the claimant's] limitations resulting from her impairments." On the other hand, in *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1161 (D. Kan. 2011), a physician's opinion that the claimant "cannot work a 40-hour workweek with the usual expectations and demands, and that he is 'totally and permanently disabled' reflects judgments about the severity of Plaintiff's impairments, about the prognosis for his condition, and about what Plaintiff can still do despite his impairments" and was therefore a medical opinion.

Here, the Court finds that Dr. Siegel's opinion is a medical opinion. Dr. Siegel's statement that this is a "chronic problem without an endpoint" and her conclusion that surgery would likely not solve the problem (Tr. 676) reflect a "judgment about the nature and severity"

10

of Graves' impairment as well as her "prognosis," *see* 20 C.F.R. § 404.1527(a)(2). Further, Dr. Siegel described the symptoms Graves faced, including problems with "gripping and grabbing activities." (Tr. 676.) Dr. Siegel's statement regarding Graves' need to modify "gripping and grabbing" also reflects Dr. Siegel's opinion on Graves' physical restrictions and abilities despite her impairment.

Because Dr. Siegel's opinion is a medical opinion and Dr. Siegel is a treating physician, *the ALJ is required to either give her opinion controlling weight, or give good reasons not to and explain the weight to which the opinion is entitled under the factors enumerated in 20 C.F.R. § 404.1527(c).* *Wilson*, 378 F.3d at 544. The ALJ did not give this opinion controlling weight; in fact, the ALJ did not mention Dr. Siegel's opinion at all. (*See* Tr. 14.) Furthermore, he did not explain the weight he accorded Dr. Siegel's opinion. The ALJ's only explanation of the weight accorded Graves' medical evidence, other than the reports of Drs. Magpantay and Yuill, was that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . . The finding of diminished credibility is supported by inconsistencies between the claimant's allegations and the paucity of objective medical evidence." (Tr. 14.) As an assessment of a treating physician's medical opinion, the ALJ's determination leaves little to go by. Even if read as an assertion that Dr. Siegel's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," as it must be under 20 C.F.R. § 404.1527(c)(2) to be accorded controlling weight, the statement does not address the supportability of Dr. Siegel's opinion specifically, or any of the other factors relevant to a determination of the weight due her opinion under the regulations.

11

Failure to follow the procedural requirement of "good reasons" connotes a lack of substantial evidence and is grounds for remand unless the failure to properly weigh the treating source medical opinion is harmless error. *Wilson*, 378 F.3d at 547; *see supra*. Upon review of Dr. Siegel's treatment notes, this Court finds that her opinion is not "so patently deficient that the Commissioner could not possibly credit it," *see Wilson*, 378 F.3d at 547, because Dr. Siegel's opinion is consistent with Graves' diagnosis of degenerative arthritis in that joint (Tr. 688), Graves' records from Dr. Siegel's practice reflecting a history of pain in her thumb (*id.* 677, 684, 685, 686, 688), the creation of a splint for the thumb (*id.* 682), repeated injections of Celestone and Lidocaine in the thumb (*see id.* 677), continued complaints despite these interventions (*id.* 676), and the opinions of other physicians discussed below.

Furthermore, the ALJ did not adopt Dr. Siegel's opinion or make findings consistent with it. *See Wilson*, 378 F.3d at 547. Although the ALJ determined "the claimant was unable to perform her past relevant work as a rural mail carrier" (Tr. 14), the ALJ's residual functional capacity assessment is inconsistent with Dr. Siegel's opinion because the ALJ found Graves capable of "frequent reaching, handling, fingering, and feeling." (Tr. 11.) The ALJ also adopted Vocational Expert testimony about jobs available in the national economy that someone with Graves' residual functional capacity could perform (Tr. 15), but the jobs identified by the Vocational Expert require frequent use of "all your fingers in both of your hands" (Tr. 43). Although "the ALJ may rely upon the testimony of a vocational expert . . . it 'must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects.'" *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Finally, as indicated above, the ALJ did not adequately explain why he disregarded Dr. Siegel's opinion, so he did not meet the

goal of 20 C.F.R. § 1527(d)(2), "the provision of the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547.

The ALJ did not give controlling weight to Dr. Siegel's medical opinion, did not give good reasons for ignoring the opinion, and this omission was not harmless error. This failure "denotes a lack of substantial evidence," *Friend*, 375 F. App'x at 551, thus Graves' motion is **GRANTED** as to Dr. Siegel's medical opinion.

2. Dr. Yuill

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper weight to the medical opinion of Dr. John Yuill. (Doc. No. 23 at 4.) First, Dr. Yuill is a treating source. Graves had an ongoing treatment relationship with Dr. Yuill, seeing him at least fifteen times over a two year period. (Tr. 891–921.) Her records from Dr. Yuill's practice indicate she attended follow-up visits as prescribed (*id.*), thus she also saw Dr. Yuill with "a frequency consistent with accepted medical practice" for her conditions and his practice area, 20 C.F.R. § 404.1502.

The Commissioner contends that the opinion at issue was not a "medical opinion" entitled to controlling weight analysis under 20 C.F.R. § 404.1527(c). (*See* Doc. No. 25 at 4.) Graves disagrees. (Doc. No. 23 at 4.) The opinion at issue states:

> I concur that Ms. Graves has findings of fibromyalgia which causes [sic] diffuse muscle pain. She also has left hand osteoarthritis that impairs her ability to perform repetitive motion. Given these impairments, she does not seem capable of performing all of the duties of a Rural Carrier as described, more specifically, I doubt she can lift 70lbs or perform the repetitive hand motion required to sort and collect letters and parcels.

(Tr. 891.) The Court finds that Dr. Yuill's opinion reflects his judgment about the "nature and severity" of Graves' fibromyalgia and osteoarthritis, including her symptoms of diffuse pain, her

13

diagnoses, and abilities and restrictions in light of these findings. Accordingly, the opinion is a "medical opinion" 20 C.F.R. § 404.1527(a)(2) must be given controlling weight unless the ALJ has good reasons for discounting the medical opinion *and* explains his reasons in the decision.

Unlike with Dr. Siegel, the ALJ described Dr. Yuill's medical opinion in his administrative decision (Tr. 13), noting that Dr. Yuill "opined that the claimant was unable to perform her past relevant work as a rural mail carrier" and that the ALJ "concurs" with that assessment (Tr. 14). However, the ALJ did not give Dr. Yuill's opinion controlling weight, as evidenced by the fact that the ALJ's assessment of Graves' residual functional capacity did not preclude repetitive hand motions, and that the "jobs that exist in significant numbers in the national economy that the claimant can perform" all require frequent use of all fingers in both hands. *See supra* Section IV.A.1. Because Dr. Yuill is a treating source and the ALJ did not give his medical opinion controlling weight, the ALJ was required to explain the deference accorded the opinion and the reasons for that deference in the administrative decision. *See e.g. Wilson*, 378 F.3d at 544.

A failure to give such good reasons denotes a lack of substantial evidence and justifies remand unless it is harmless error. *Id.* at 547; *see supra*. First, Dr. Yuill's opinion is not "so patently deficient that the Commissioner could not possibly credit it." *Friend*, 375 F. App'x at 551 (quoting *Wilson*, 378 F.3d at 547). As the Magistrate Judge pointed out, the ALJ "concurred with Dr. Yuill's assessment that Plaintiff was unable to return to her past work as a rural mail carrier." (Doc. No. 18 at 20.) "The Sixth Circuit has suggested, where an ALJ relies on a doctor's opinion in part, the opinion cannot then be considered patently defective." *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 924 (E.D. Tenn. 2013) (*citing Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). As the ALJ relies in part upon Dr. Yuill's opinion, Dr. Yuill's

14

medical opinions cannot be considered patently deficient. Second, the ALJ did not adopt "findings consistent with the opinion" of Dr. Yuill regarding Plaintiff's ability to perform repetitive hand motions. *See Friend*, 375 F. App'x at 551. As described above, the ALJ's residual functional capacity assessment would require "frequent" handling, as would the jobs described by the vocational expert. Finally, the ALJ did not meet the goal of § 1527(d)(2), "the provision of the procedural safeguard of reasons." *See id.* As described in the analysis above, the ALJ does conclude the claimant's statements are inconsistent with the record evidence, but the ALJ does not malign any evidence beyond the claimant's own statements. (*See* Tr. 14.)

The Court finds the ALJ improperly failed to give Dr. Yuill's medical opinion regarding Plaintiff's ability to use her hands controlling weight, and failed to comply with the procedural requirements of stating good reasons for his decision. Because this failure was not harmless error, Graves' motion is **GRANTED** as to Dr. Yuill's medical opinion.

3. Dr. Ali

Plaintiff objects to the ALJ's failure to give controlling weight to the medical opinions of Dr. M. Farooq Ali, specifically to his "Physical Capacities Evaluation" ("PCE") of September 21, 2009. (Doc. No. 23 at 4 (citing Tr. 80).) Magistrate Judge Knowles found that the ALJ did consider Dr. Ali's treatment notes, but that the ALJ did not need to give Dr. Ali's PCE controlling weight because the PCE was inconsistent with Dr. Ali's own treatment notes. (Doc. No. 18 at 20–23.)

First, the Court notes that Dr. Ali is a treating source under § 404.1527(c)(2) because he and Graves had an ongoing treatment relationship: Graves saw Dr. Ali at prescribed intervals from September 2007 through February 2010. (*See* Tr. 994–1017, 1081–84.) Accordingly, the

15

ALJ is required to give controlling weight to Dr. Ali's "medical opinions" or give good reasons not to. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)).

Medical opinions "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In the Physical Capacities Evaluation, Dr. Ali addressed considerations relevant to Graves' residual functional capacity, such as how long Graves can sit and stand, whether Graves can use her hands and feet for repetitive tasks, whether Graves can lift or carry objects of various weights, and whether Graves has other environmental restrictions. (Tr. 80–81.) The PCE thoroughly described Graves' abilities "despite impairments" and her "physical or mental restrictions." However, because Dr. Ali did not indicate Graves' "diagnosis and prognosis," "symptoms," or any other information to indicate the basis for the opinion, Dr. Ali's PCE is not a "medical opinion" entitled to controlling weight. (*See id.*)

Because Dr. Ali's PCI is not a "medical opinion," the ALJ was not required to consider it pursuant to the framework put forth in § 404.1527(c), or to explain his reasons for the weight assigned such evidence. *See* 20 C.F.R. §§ 404.1520(a)(3), 404.1520b, 404.1527. "Indeed, the regulations specifically exclude from consideration opinions on certain issues, such as conclusory statements that the claimant is disabled," *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012), and residual functional capacity findings, *see* § 404.1527(d)(2), because such issues are "administrative findings that are dispositive of a case" and therefore "reserved to the Commissioner," § 404.1527(d). Accordingly, Dr. Ali's PCI was given due weight, and Graves' motion as to Dr. Ali's opinion is **DENIED**.

4. Dr. Butler

Finally, Graves argues that the ALJ failed to properly weigh Dr. Bruce Butler's medical opinion that Plaintiff has an "inability to perform repetitive motions with the hands (especially the left hand)." (*See* Doc. No. 23 at 4 (quoting Tr. 745).) Dr. Butler's opinion is a "medical opinion" under § 404.1527(a)(2) because it includes "judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." (*See* Tr. 744–46.) However, Dr. Butler's opinion is not entitled to controlling weight because Dr. Butler is not a treating source: a treating source has an "ongoing relationship" with the claimant, but Dr. Butler based his medical opinion on documentation submitted by other physicians and never personally examined Graves. (Tr. 744–46.)

"[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight'" and are not subject to the "good reasons" requirement. *Gayheart*, 710 F.3d at 376. Nevertheless, if the treating physician's opinion is not afforded "controlling weight," the nonexamining source's opinion must be evaluated pursuant to the factors enumerated in § 404.1527(c). *Id.*; *accord* 20 C.F.R. § 404.1527(b) ("we will always consider the medical opinions in your case record"). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record," and is grounds for remand. *Cole*, 661 F.3d at 937. As described above, the ALJ did not accord Graves' treating physicians' opinions controlling weight, thus the ALJ was required to consider what weight, if any, to assign Dr. Butler's Fitness for Duty Evaluation.

Dr. Butler completed Graves' Fitness for Duty Evaluation after reviewing notes from an examination conducted by Dr. Magpantay, as well as other medical documentation. (Tr. 744.)

17

In his analysis, the ALJ references Dr. Magpantay's evaluation (*see* Tr. 13 (citing Tr. 667–75); Tr. 14 (same)) but never Dr. Butler's. Furthermore, the ALJ does not give any explanation for his failure to consider Dr. Butler's assessment. In his assessment, Dr. Butler reaches substantially the same conclusions as Dr. Siegel, that Graves' osteoarthritis and other conditions limit her abilities to "perform the physical tasks of the job such as lifting, grasping, carrying, physical stamina, and overall impaired physical ability," leave her unable to "perform repetitive motions with the hands," and that these conditions already reached "maximum medical improvement, which means they are unlikely to improve with any additional medical intervention." (Tr. 744–745.) For the reasons described in the analysis of Dr. Siegel's medical opinions above, the Court finds that the ALJ's failure to consider these opinions was not "harmless error," but is grounds for remand. Accordingly, Graves' motion as to Dr. Butler's opinion is **GRANTED**.

V. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report in part and **REJECTS** the Magistrate Judge's Report in part. The Court **GRANTS** Plaintiff's Motion in part, **VACATES** the administrative determination, and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Order. The Commissioner's Motion for a Stay Because of Lapse of Appropriations (Doc. No. 27) is hereby **TERMINATED AS MOOT**. The Clerk of the Court is **DIRECTED** to close this case.

It is so ORDERED.

Entered this the 6th day of April, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

18